## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JANET FAYE DAVIS | : | DOCKET NO. 2:11-cv-231 |
| VERSUS | : | |
| | | JUDGE MINALDI |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF SOCIAL | | |
| SECURITY | : | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of Social Security Disability Insurance Benefits and Supplemental Security Income Benefits.  This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court finds that the Commissioner's decision should be REVERSED and this matter REMANDED.

### PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental security income alleging disability beginning on August 14, 2007.  Tr. 113, 118, 122, 126.  The claim was initially denied on August 18, 2008.  Tr. 51-54.

Following an administrative hearing held on August 14, 2009, the Administrative Law Judge (ALJ) issued an unfavorable decision on August 31, 2009.  Tr. 9-21.  In this decision, the ALJ found plaintiff's impairments of chronic fatigue syndrome and fibromyalgia were severe but he found she retained the residual functional capacity ("RFC") to perform medium work with

certain restrictions.  Relying on the testimony of a vocational expert ("VE") the ALJ found that plaintiff could perform her past relevant work as it is actually and generally performed.  Thus, the ALJ determined that plaintiff was not disabled.  *Id.*

Plaintiff filed a request for appellate review of this decision and on December 10, 2010, her request was denied.  Tr. 1-3.  On February 10, 2011 plaintiff filed suit in this court appealing the determinations of the Commissioner.  Doc. 1.

## FACTS

Plaintiff, age 54 at the time of her hearing, is a high school graduate.  Tr. 31.  She testified that she was last employed as a receptionist at Lake Charles Medical Surgical Clinic. *Id.*  She worked at that job for approximately three years.  Tr. 143.  She stopped working in August of 2007 and has not worked since then because she has not been "physically able to."  Tr. 33.  Prior to her position as a receptionist, plaintiff worked as a supervisor and title rejection specialist for Tarrant County in Fort Worth, Texas.  Tr. 32.  She worked in that position from October 1985 until January 2004, over 18 years.  Tr. 143.

Plaintiff testified that she began having physical problems in 1999.  Tr. 33.  She stated that she went to several doctors in Texas but none could diagnose her condition.  She stated that she was feeling exhausted and was hurting and at some point one of her doctors tested her for Epstein-Barr virus and the results were positive.  Tr. 34.

When the ALJ asked plaintiff what she does all day, plaintiff responded "not a lot."  Tr. 35.  She stated that she gets up around 5:00 or 6:00 and tries to do a little to keep her muscles going, but she does not do much.  After about 15 minutes she stated she is "wiped out."  *Id.*  On some days she tries to do some cooking and cleaning but her husband does most of that.

Plaintiff testified that she rotates between sitting and standing because of her pain.  She contends that even lying down is uncomfortable sometimes.  Tr. 37.  She stated that she never has any level of comfort.  She testified that her skin is very sensitive and she has problems wearing certain clothing and breaks out in rashes.  She has trouble sitting when she has a rash if it is on her back and legs.  *Id.*

Plaintiff stated that she is on the medication Amitriptyline which makes her sleepy.  She is also on pain medication that helps somewhat but her pain never really goes away.  *Id.*  Plaintiff contends that she has problems with migraines and headaches and she is sensitive to light and noise.  Tr. 38.  Her pain medication makes her drowsy, have blurred vision, and makes her stomach upset.  *Id.*

When asked what keeps her from working, plaintiff testified that she is always exhausted and in pain.  She is allergic to many chemicals, susceptible to hot and cold temperatures, has short-term memory loss, and her cognitive thinking has deteriorated.  Tr. 36.  She also stated that she has a bulging disc in her back.  Tr. 39.  She stated that she cannot lift or carry anything.  If she tries to pick something up, for instance her purse, she stated that she "pays for it" because her shoulders and back will be sore and it consumes all of her energy to carry something.  *Id.*

## MEDICAL EVIDENCE

### *a.  Dr. Patricia Salvato*

The medical evidence submitted shows that plaintiff was admitted to Twelve Oaks Medical Center on August 28, 2006, for a possible GI bleed.  Her admitting physician was Dr. Patricia Salvato.  Dr. Salvato noted that plaintiff was first her patient in 2004 and she has had a history of fatigue since 1999 to 2000.  Plaintiff complained of mental fog, swollen glands, low grade fever, frontal headache, muscle pain, joint pain, and sleep disturbance.  Dr. Salvato

indicated that plaintiff had been previously been diagnosed with fibromyalgia, Epstein-Barr, chronic fatigue and increased lipids.

Dr. Salvato confirmed the diagnosis of chronic fatigue syndrome.  She noted that on plaintiff's last visit to see he,r which was a couple of months prior, plaintiff was severely depressed, almost suicidal and fatigued.  On the date of admittance, plaintiff's complaints were depression, persistent nausea and vomiting, and blood in her stool.  Dr. Salvato diagnosed chronic fatigue syndrome and fibromyalgia, possible gastrointestinal bleeding with nausea, vomiting and guaiac positive stools, and increasing depression.  . Tr. 187-88.

On April 18, 2008, Dr. Salvato wrote a report addressed to the Department of Social Services in connection with plaintiff's application for benefits.  In her report she indicated that plaintiff had been under her care since December 27, 2004, when she presented with complaints of fatigue beginning in 1999.  Plaintiff had symptoms of swollen lymph nodes, fatigue, widespread pain, headaches, significant cognitive difficulty, and memory and concentration problems.  Dr Salvato reported that based on her symptoms, history, and laboratory testing, plaintiff was diagnosed with chronic fatigue syndrome.

Dr. Salvato also noted that plaintiff has evidence of fibromyalgia documented by diffuse musculoskeletal pain and the presence of soft tissue tender points in at least eleven of eighteen defined anatomical sites.  She reported that examinations in her office revealed non-exudative pharyngitis, enlarged cervical lymph nodes, low grade fever, and eleven of eighteen positive tender points above and below the waist on the right and left side of her body.

Dr Salvato further noted that testing revealed low natural killer cell function, a characteristic of chronic fatigue syndrome.  Dr. Salvato indicated that plaintiff additionally displayed four or more of the symptoms of chronic fatigue syndrome, un-refreshing sleep,

muscle pain without swelling, multi-joint pain, sore throat, problems with memory and concentration, recurring headaches and fevers.  Tr. 257-59.

In her report Dr. Salvato noted that when she last examined plaintiff on February 15, 2008, plaintiff complained of significant intensification of her symptoms which prevent her from engaging in prolonged sitting, standing, walking, understanding, remembering and following through on even simple instructions, interacting with others and maintaining a satisfactory work presence.  Her physical examination of plaintiff revealed fourteen of eighteen tender points consistent with fibromyalgia.  Dr. Salvato noted that plaintiff has experienced a greater than fifty percent decrease in her ability to perform activities of daily living and her recent decline has left plaintiff essentially bedridden.  She reported that plaintiff was unable to be active for fifteen minutes without causing total exhaustion and pain.  Dr. Salvato stated that plaintiff was unable to perform any part time or full time employment.  *Id.*

In a medical source statement dated October 15, 2008, Dr. Salvato opined that plaintiff was occasionally and frequently unable to lift and/or carry less than ten pounds due to her back pain, arm/shoulder pain, muscle/joint pain, fatigue and weakness.  She indicated that plaintiff could stand and/or walk for less than two hours in an eight-hour workday due to fatigue, muscle/joint pain and back pain, that plaintiff should alternate sitting and standing to relieve pain and discomfort, and that she was limited in her ability to push and/or pull in both her upper and lower extremities.  Dr Salvato indicated that plaintiff could occasionally climb and never balance, kneel, crouch, crawl, or stoop.  Plaintiff could occasionally reach, handle and finger and could frequently feel.  She noted limited function in seeing due to change in vision and dry eyes, limited function in speaking because plaintiff experiences word-searching problems associated with cognitive difficulties consistent with fibromyalgia and chronic fatigue syndrome. Dr.

Salvato noted unlimited function in hearing and indicated limited exposure to temperature extremes, noise, dust, vibration, humidity/wetness, hazards, and fumes.  Tr. 253-56

In another report issued by Dr. Salvato on July 12, 2009, addressed "to whom it may concern," she reiterated the information previously contained in her April 18, 2008, report.  Dr. Salvato additionally noted that an MRI revealed significant cervical disc bulging with narrowing of the neural foramina.  She reported that no treatment has significantly improved plaintiff's quality of life and that plaintiff lacked the capacity to work at gainful employment based on her diagnosis of chronic fatigue syndrome, fibromyalgia, and cervical disc disease.  Additionally, Dr. Salvato diagnosed secondary depression and anxiety.  Tr. 251-52.

On the same date, July 12, 2009, Dr. Salvato completed a medical source statement wherein she opined that plaintiff could frequently and occasionally lift and/or carry less than ten pounds, could stand and/or walk for less than two hours in an eight-hour workday, sit for less than two hours in an eight-hour workday, and was limited in her ability to push and/or pull in both her upper and lower extremities.  Dr. Salvato noted that plaintiff was never to climb, balance, kneel, crouch, crawl, or stoop.  Plaintiff could occasionally reach, handle and finger and could frequently feel.  She noted unlimited function in seeing, hearing and speaking and indicated limited exposure to temperature extremes, noise, dust, vibration, humidity/wetness, hazards, and fumes.  Tr. 246-50.

In support of her findings, Dr. Salvato noted that clinical findings show low adenosine triphosphate levels which stores energy in muscles in the body.  Additionally, she noted that a cervical spine MRI showed disc bulging and trigger points on multiple examinations are consistent with fibromyalgia.  She indicated that plaintiff suffers from widespread muscle/joint pain, back pain, leg weakness and fatigue which limits her ability to perform the activities listed.

Dr. Salvato indicated that the postural limitations are supported by plaintiff's decreased range of motion in multiple joints and greater that eleven of eighteen trigger points consistent with fibromyalgia.  Dr. Salvato stated that plaintiff suffers from ataxia - imbalance due to neurologic problems which makes it difficult for plaintiff to climb or balance.  Plaintiff suffers from swelling in both knees which makes it difficult for her to kneel or stoop and cervical spasms with objective evidence of disc disease.  Plaintiff's manipulative limitations are due to joint swelling, decreased range of motion of the hands and pain upon range of motion.  Plaintiff's asthma is exacerbated by temperature extremes, dust, humidity or fumes and odors.  Dr. Salvato noted that plaintiff's severe fatigue is exacerbated by temperature extremes.   Blood testing showed evidence of Epstein-Barr virus which flares in extreme heat.  Tr. 247.

Finally, on March 1, 2010, Dr. Salvato issued another report directed to "to whom it may concern" which was submitted to the Appeals Council.  In this report Dr. Salvato noted that she examined plaintiff on February 19, 2010,[1] and plaintiff indicated that her health was declining.  Plaintiff reported that she had recently been diagnosed with asthma.  Dr. Salvato noted that plaintiff experienced a greater that fifty percent decrease in her activities of daily living, had difficulty with concentration and had objective evidence of memory disturbance with decreased serial sevens and poor recall of three objects at five minutes.  Dr. Salvato noted that on physical testing, plaintiff had objective evidence of decreased range of motion and decreased strength.  She reported that the pain in plaintiff's neck has intensified due to cervical disc bulging with narrowing of the neural foramina.  Again, she noted that plaintiff was unable to sit, stand, or walk for prolonged periods of time and she was unable to be active for fifteen minutes without

---

[1] The date of this examination does not fall within the contested time period.  In this case, the relevant dates are August 14, 2007 the date plaintiff alleged she became disabled and August 31, 2009, the date of the ALJ's decision. *See Garson, v. Barnhart*, 162 F.App'x 301, 303-04 (5th Cir. 2006).  To the extent that this report contains information relevant to this time period, it will be considered.

causing total exhaustion and pain.  Dr. Salvato opined that plaintiff lacked the capacity to work in any gainful employment.  Tr. 7-8.

### b.  Dr. Thomas Lebeau

Evidence submitted from Dr. Thomas Lebeau shows that plaintiff presented in his office on January 11, 2007, with high blood pressure, headache, tingling in both arms and blurry vision. Tr. 183.  On March 28, 2007, plaintiff appeared for a blood pressure check.  *Id.*

Plaintiff fell off a chair at work and was seen by Dr. Lebeau on August 1, 2007.  She complained of low back pain, and neck pain.  Tr. 182.  X-rays obtained on that date show no acute fracture or subluxation of the lumbar spine and a normal thoracic and cervical spine.  Tr. 179.  On August 2, 200,7 plaintiff called for x-ray results and indicated that her back and neck were still hurting.  Tr. 181.  On August 3, 2007, plaintiff called to report that her back and neck were still hurting and requested pain medication.  On that date, Dr. Lebeau released plaintiff to return to light duty as of August 6, 2007.  *Id.*

### c.  Dr. Bryan Bolwahnn, Ph.D.

Dr. Bryan Bolwahnn performed a consultative psychological evaluation on March 28, 2008, at the request of Disability Determination Services.  Plaintiff alleged chronic fatigue syndrome, fibromyalgia, and Epstein-Barr syndrome.  Plaintiff stated that she has a history of depression and anxiety but has never been formally diagnosed.  She is prescribed Amitryptiline for sleep and pain, Tofranil for sleep and Xanax.  Tr. 184-85.

Dr. Bohwahnn noted that plaintiff appeared to have mild impairments in social functioning and that she was very nervous during the evaluation and would have mild difficulties interacting with others.  He indicated that plaintiff's activities of daily living were mildly impaired due to her chronic fatigue and fibromyalgia but she is able to bathe herself, dress

herself, drive, and perform simple cooking.  Plaintiff also enjoys reading but has trouble remembering what she reads.  Plaintiff reported that her husband helps her coordinate her medications and she does not manage her finances.  Plaintiff informed Dr. Bohwahnn that she completed high school and took some post-high-school computer classes.  She indicated that she left her last employment due to worsening of her chronic fatigue and difficulty concentrating. Plaintiff appeared tearful about her inability to work and be independent.  Even with her medication, plaintiff stated that her sleep is impaired.  *Id.*

On conducting a mental status exam, Dr. Bolwahnn noted appropriate hygiene, grooming and eye contact and cooperativeness.  Plaintiff did not appear depressed and denied suicidal or homicidal ideation.  There was no evidence of psychosis.  Plaintiff appeared to be anxious.  Dr. Bolwahnn indicated that plaintiff's memory was mildly impaired because she was only able to recall one of three words presented five minutes earlier.  She recalled two of three words when prompted and her memory was adequate for historical information.  Plaintiff's concentration was not impared as she could recall six digits forward.  Her intellectual functioning was estimated to be low average, she could understand and follow simple instructions.  Her abstract reasoning was found to be good.  *Id.*

Dr. Bolwahnn diagnosed adjustment disorder with anxiety and depressed mood.  He opined that plaintiff was capable of handling funds and her prognosis for improvement was guarded.  *Id.*

### d.  *W.O. Moss Regional Medical Center*

On May 12, 2008, plaintiff presented at W. O. Moss Regional Medical Center with complaints of neck and lower back pain.  Tr.  206.  Imaging of the cervical and lumbar spine taken on May 12, 2008 show no abnormalities.  Tr. 194-95.

On June 18, 2008, plaintiff was seen at the emergency room at Moss Regional complaining of right knee pain.  She gave a history of falling on her leg a couple of weeks prior and her knee was swollen and painful.  Tr. 201.  She was discharged with instructions to rest, use ice, compression and elevation.  She was prescribed Naprosyn and Vicodin.  Tr. 203.

### e.  *Dr. Gopal Damerla*

Dr. Gopal Damerla performed a consultative examination on July 26, 2008, at the request of Disability Determination Services.  Plaintiff reported that she had a history of fibromyalgia since 1999.  At a recent exam she had eighteen trigger points.  Her symptoms include pins and needles in both wrists, pain in her wrists, tender muscles, and stomach pain.  Plaintiff indicated that she needed a cart to shop because she tires easily.  She stated that for the last three years she feels exhausted all the time.  She can only do household chores for fifteen minutes.  She cannot sit on hard surfaces because of pain in her hips.  She gets easily tired and although she is on medication her sleep pattern is sporadic.  She reported soreness in her back, neck, legs, and arms in addition to irritable bowel syndrome, headaches and palpitations.  Plaintiff indicated that she can dress herself, feed herself, can stand and walk for a total of fifteen minutes, can sit for up to three hours without difficulty, and lift up to five pounds.  She stated that she had to quit her last job because she fell out of a chair. Tr. 215-19.

Dr. Damerla's physical examination revealed that plaintiff ambulated normally and had no difficulty with balance.  She had no problem getting up or out of the chair but needed assistance getting on the exam table and getting up from the supine position.  Dr. Damerla noted no skin rash, no irregular heart rhythm or murmur, a straight and non-tender spine, paraspinal tenderness in the T2-T3 area but no bony point tenderness, normal gait without assistance, decreased grip in upper extremities of about 4/5, and normal gross manipulative skills.  *Id.*

Plaintiff's range of motion in her elbow, forearm, wrist, shoulder, cervical spine, hip, knee, and ankle were all within normal limits.  Her lumbar flexion was limited to ten degrees, and cervical spine lateral flexion was limited to about thirty degrees on both right and left side but cervical spine flexion, extension and rotation were normal.  Plaintiff's straight leg raises were negative bilaterally in both sitting and supine positions and she had the ability to lie straight back on the exam table.  Plaintiff could not walk heel to toe and could not squat on the ground more than fifty percent without difficulty.  *Id.*

Dr. Damerla's impression following his examination was fibromyalgia based on plaintiff's reported history.  He detected two trigger points on his examination and noted her autonomic symptoms of palpitations and irritable bowel syndrome and decreased grip in her upper extremities.  He additionally found that plaintiff had a history of hypertension.  Although plaintiff had a compromised range of motion of the cervical and spine, Dr. Damerla noted that her x-ray report of May 2008, two months prior, showed no evidence of degeneration.  He attributed the decrease in range to possible muscle spasm.  Dr. Damerla noted that plaintiff did not need any assistive device for ambulation and was not able to heel to toe walk.  Finally he noted that plaintiff seemed frustrated but not hopeless or suicidal.  *Id.*

### f.  *Dr. Hollis T. Rogers*

Plaintiff underwent a state agency physical RFC assessment on August 14, 2008.  She was assigned a medium RFC with limitations of occasionally lifting fifty pounds and frequently lifting twenty-five pounds, standing and/or walking for six hours in an eight-hour workday, sitting for a total of six hours in an eight-hour workday, and no limitation on pushing and/or pulling.  She was limited to occasional climbing of ramps, stairs, ladders, ropes and scaffolds, occasional balancing, stooping, kneeling, crouching, and crawling.  She had no manipulative

limitations, communicative limitations and no visual limitations but was restricted from even moderate exposure to hazards such as machinery and heights.  Tr.  220-29.

### g.  Dr. William L. Berzman

On August 15, 2008, plaintiff underwent a state agency psychiatric review.  Dr. William L. Berzman, Ph.D. diagnosed plaintiff with non-severe adjustment disorder with anxious and depressed mood.  He noted mild limitation in plaintiff's activities of daily living, social functioning, concentration, persistence and pace and noted no episodes of decompression of extended duration.  Tr. 199-213230-45.

Based on the medical evidence, the ALJ found that plaintiff's medically determinable impairments could be expected to cause some of the alleged symptoms but determined that plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC of medium work with certain limitations.  Tr. 19.

**STANDARD OF REVIEW**

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)).  The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Greenspan*, 38 F.3d at 236).  "It is 'more than a mere scintilla and less than a preponderance.'"  *Id.*  (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).  It is

"such relevant evidence as a reasonable mind might accept to support a conclusion.  It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's."  *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Conflicts of evidence are for the Commissioner, not the courts, to resolve."  *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## LAW AND ANALYSIS

### a.  *Burden of Proof*

The burden of proving that he or she suffers from a disability rests with the claimant. *Perez*, 415 F.3d at 461.  The claimant must show that he or she is unable to engage in a work activity "involving significant physical or mental abilities for pay or profit."  *Id.* (citing 20 C.F.R. § 404.1572(a)-(b)).  The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[2]; (3) whether the claimant's

---

[2]  A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a).  Basic work activities are defined at 20 C.F.R. § 404.1521(b). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work,

> impairment meets or equals the severity of an impairment listed in
> 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the
> impairment prevents the claimant from doing past relevant work
> (whether the claimant can return to his old job); and (5) whether
> the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520).  If the claimant meets the burden of proof on the first four

steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can

perform other substantial work in the national economy.  *Id.*  "Once the Commissioner makes

this showing, the burden shifts back to the claimant to rebut this finding."  *Id.* (quoting *Newton v.*

*Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

The analysis ends if the Commissioner can determine whether the claimant is disabled at

any step.  *Id.* (citing 20 C.F.R. § 404.1520(a)).  On the other hand, if the Commissioner cannot

make that determination, he proceeds to the next step.  *Id.*  Before proceeding from step three to

step four, the Commissioner assesses the claimant's residual functional capacity (RFC).  *Id.*

"The claimant's RFC assessment is a determination of the most the claimant can still do despite

his physical and mental limitations and is based on all relevant evidence in the claimant's

record."  *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)).  Specifically, in determining a

claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which

these symptoms reasonably can be accepted as consistent with the objective medical evidence

and other evidence.  20 C.F.R. § 404.1529; Social Security Ruling 96-8p.

The ALJ must also consider any medical opinions (statements from acceptable medical

sources) that reflect judgments about the nature and severity of impairments and resulting

---

irrespective of age, education or work experience."  752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341
(5th Cir. 1984)).

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of
the impairments will be considered throughout the disability determination process.  20 C.F.R. §§ 404.1520,
404.1523.  A determination that an impairment or combination of impairments is not severe will result in a social
security determination that an individual is not disabled.  *Id.*

limitations.  20 C.F.R. § 404.1527, Social Security Rulings 96-2p, 96-6p.  The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff was not disabled at step five of the sequential analysis. The ALJ found that plaintiff was capable of returning to her past relevant work based on her RFC and the testimony of the vocational expert.  Tr. 20.

### b.  *Plaintiff's Claims*

In her appeal plaintiff argues that substantial evidence does not support the ALJ's decision.  Specifically, she sets forth the following arguments:

(1)    The ALJ's residual functional capacity assessment is not supported by substantial evidence.

(2)    The ALJ erred in assessing the petitioner's credibility.

(3)    The ALJ denied petitioner a full and fair hearing.

### 1.  Was the ALJ's RFC supported by substantial evidence?

First, plaintiff argues that the ALJ erred in considering her mental impairment in isolation from her physical impairments.  Citing *Johnson v Sullivan,* 922 F.2d 346, 350-52, (7th Cir. 1990), plaintiff contends that all impairments must be considered by the ALJ in combination. Plaintiff asserts that the ALJ erred in considering her mental impairment of adjustment disorder with anxiety and depressed mood in isolation and thus assigned an unsuitable RFC.  Doc. 18, p. 7.

In response, the Commissioner asserts that (1) plaintiff fails to specify which mental impairment the ALJ failed to consider in the RFC and (2) the ALJ specifically considered

plaintiff's impairment of adjustment disorder with anxiety and depressed mood and found that it caused no more than mild limitations.  Doc. 19, p. 1.

Whether plaintiff has a severe impairment is the step two consideration in the five-step sequential analysis of a disability claim.  *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005)(citing 20 C.F.R. § 404.1520).  A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a).  According to *Stone v. Heckler,* 752 F.2d 1099 (5th Cir.1985), "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  752 F.2d at 1101 (quoting *Estran v. Heckler,* 745 F.2d 340, 341 (5th Cir.1984)); *see also Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987).

Under 42 U.S.C. § 423(d)(2)(B), "[i]n determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity" the Commissioner "shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."

Here, the ALJ found at step two that plaintiff suffered from the severe impairments of chronic fatigue syndrome and fibromyalgia.  Tr. 14.  Additionally, the ALJ found that plaintiff's "medically determinable mental impairment of adjustment disorder with anxious and depressed mood does not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and it therefore nonsevere."  Tr. 15.  Thus, the ALJ properly performed the step two evaluation.

Since we find that the ALJ clearly considered both plaintiff's physical and mental limitations in combination at step two we find this argument to be without merit.

Plaintiff next argues that the ALJ made an erroneous evaluation of her subjective complaints when determining her RFC. She asserts that the ALJ should have given great weight to her treating physician's RFC assessment rather than a non-examining physician's RFC.

The Commissioner argues that the ALJ considered plaintiff's subjective symptoms associated with her fibromyalgia and correctly determined that the relevant medical evidence supported his RFC determination.

In his opinion the ALJ found that plaintiff had the RFC to perform medium work with limitations of occasional climbing of ladders, ropes, scaffolds, ramps, stairs; balancing, stooping, kneeling, crouching, and crawling. Additionally, plaintiff must avoid exposure to hazards such as machinery and heights. Tr. 16. The ALJ stated:

> After careful examination of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Tr. 19.

The ALJ gave significant weight to Dr. Hollis T. Rogers' physical RFC and to Dr. William L. Berzman's psychiatric review technique. He gave "little weight" to the opinion of Dr. Patricia Salvato, characterizing her as plaintiff's "alleged treating physician." Tr. 20. The ALJ went on to state:

> Even accepting Dr. Salvato as the claimant's treating physician, the record contains only one treatment note from August 2006 from Dr. Salvato. Accordingly, the undersigned finds the limitations assigned by Dr. Salvato are unsupported by any objective medical evidence of record.

Tr. 20.

Plaintiff argues that since Dr. Hollis T. Rogers, the state consulting physician, never physically examined her, the ALJ should have accepted the opinion of Dr. Salvato, her treating physician.  Since the ALJ rejected Dr. Salvato's opinion, plaintiff asserts that he was required to give an analysis of why he was rejecting the opinion of her treating physician in accordance with the factors set forth in 20 C.F.R. 404.1527(d)(2) which he failed to do.  Plaintiff maintains that this failure requires reversal.

In order to determine whether or not the ALJ erred in failing to consider the factors outlined in 20 C.F.R. 404.1527(d)(2), this court must first determine if Dr. Salvato should be recognized as plaintiff's treating physician.

The Social Security regulations define a treating source as:

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 404.1502

The medical evidence of record establishes that Dr. Salvato was plaintiff's admitting physician when she was treated at Twelve Oaks Medical Center on August 28, 2006.  According to Dr. Salvato's patient history, plaintiff "is well known to me from the first visit in December

2004." Tr. 187.  Dr. Salvato noted that she had last seen plaintiff "a couple of months ago" and was treating her for chronic fatigue and fibromyalgia.  *Id.*

In a report dated April 18, 2008 Dr. Salvato again noted that plaintiff had been her patient since December 27, 2004.  Tr. 257-59.  Her report states that "physical exams in her office" and "laboratory testing" indicate a diagnosis of chronic fatigue syndrome.  Tr. 258.  Dr. Salvato's report indicates that plaintiff was last seen by her on February 15, 2008 at which time plaintiff's symptoms were intensified.  *Id.*

Dr. Salvato completed medical source statements on October 15, 2008 and on July 12, 2009.  Tr. 253-56, 246-50.  In another report dated July 12, 2009 Dr. Salvato wrote that plaintiff's "pain has been intensified in her neck and an MRI shows significant cervical disc bulging."  Tr. 252.  She stated, "despite treatment over time, no treatment has significantly improved her quality of life."  *Id.*

Finally, in a report dated March 1, 2010 Dr. Salvato noted that plaintiff was again recently examined and stated that her health was declining.  Tr. 7-8.

At the hearing plaintiff testified that after she moved to Lake Charles in 2004 she saw Dr. Thomas Lebeau who referred her to Dr. Salvato because he (Dr. Lebeau) frequently dealt with her on issues of chronic fatigue syndrome and fibromyalgia.  Tr. 34.  Plaintiff stated that "she [Dr.Salvato] proceeded to do the testing on the chronic fatigue, and with my symptoms, started to treat me."  *Id.*

Based on the above evidence, this court is convinced that Dr. Salvato should have been regarded as plaintiff's treating physician.  It is clear that plaintiff and Dr. Salvato had an ongoing treatment relationship since 2004 and that Dr. Salvato diagnosed and has treated plaintiff for chronic fatigue syndrome and fibromyalgia.  Dr. Salvato's reports and plaintiff's testimony

establish these facts.  We have no reason to consider Dr. Salvato's reports establishing such a relationship as suspect.

At the hearing the ALJ discussed the lack of Dr. Salvato's "treatment records" in the record.  Tr. 27.  He noted that the record contained only one treatment record from 2006.  *Id.* While this court agrees that the record would be more complete if Dr. Salvato's medical records were included, we nevertheless find that the reports composed by Dr. Salvato sufficiently establish that she is plaintiff's treating physician.  Written reports by physicians who have examined the claimant setting forth medical data are admissible in evidence in a disability hearing and may constitute evidence supportive of findings by hearing examiners.  *See Richardson v. Perales,* 91 S.Ct. 1420, 1428 (1971).

Finding Dr. Salvato to be plaintiff's treating physician, we now turn to whether the ALJ was required to perform the analysis required by 20 C.F.R. § 404.1527(d)(2).

Generally, a treating physician's opinion is entitled to more weight than a non-examining physician; however, the ALJ may reject the opinion of any physician when it is not supported by the evidence.  *Bradley v. Bowen,* 809 F.2d 1054, 1057 (5th Cir. 1987).  "The expert opinions of a treating physician as to the existence of a disability are binding on the fact-finder unless contradicted by substantial evidence to the contrary."  *Bastien v. Califano* 572 F.2d 908 (5th Cir. 1978).

In *Newton v. Apfel,* 209 F.3d 448, 453 (5th Cir. 2000), a case cited by plaintiff, the court stated, "absent reliable evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."  Under the statutory analysis, the ALJ must evaluate: (1) the length

of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supporting evidence presented; (4) the level of consistency between the physician's opinion and the record as a whole; (5) the physician's specialization; and (6) any other relevant factors.  20 C.F.R. § 404.1527(d)(2).

When, as here, the ALJ declines to afford controlling weight to the opinion of a treating physician and there is an absence of reliable evidence from another treating or examining physician, the ALJ must explain his reasons for deciding to do so.  If the ALJ fails to follow the statutory analysis the case must be remanded.  *See Newton v. Apfel, supra.*

Since the ALJ failed to follow the appropriate legal standard when assessing the opinion of the treating physician, this court finds that this case must be remanded to so that the ALJ can properly assess the opinion of plaintiff's treating physician, Dr. Salvato, in accordance with 20 C.F.R. § 404.1527(d)(2).  The ALJ is further instructed to subpoena any and all medical records from plaintiff's treating physician in order to properly conduct such assessment.

### 2.   Did the ALJ err in assessing plaintiff's credibility?

Plaintiff contends that the ALJ erred in finding her testimony only partially credible. Plaintiff argues that her allegations of disabling pain and fatigue are consistent with fibromyalgia and the opinion of her treating physician.  She concludes that the ALJ must have "misunderstood [her] fibromyalgia when he decided not to fully credit her allegations."  Doc. 18., p. 11.

In response, the Commissioner maintains that the ALJ properly concluded that plaintiff's subjective statements regarding her severity and degree of limitations were not entirely credible. The Commissioner points out that the ALJ included significant limitations in his RFC determination to account for plaintiff's symptoms and the medical records did not support

plaintiff's allegation of constant pain.  Additionally, the Commissioner notes that plaintiff gave

conflicting reasons for having to leave her last job.

In determining the credibility of plaintiff, the ALJ stated,

[T]he undersigned finds the credibility of claimant's allegations is diminished by
her vague testimony regarding jail time served for bribery and misappropriation
of funds.  In a disability report, it was noted that the claimant stopped working on
August 14, 2007, due to the fact that she 'was sentenced to jail in Texas,' (Ex.
5E).  The undersigned finds such evidence suggests the claimant stopped working
for reasons unrelated to the allegedly disabling impairments.

Tr. 20.

The court agrees with the Commissioner.  The ALJ may determine credibility and weigh

testimony.  *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir.2000).  The ALJ has the discretion

"to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to

considerable deference.  *Chamblis v. Massanari,* 269 F.3d 520 (5th Cir. 2001).  In this case, the

ALJ gave sufficient reasons for his finding that plaintiff's allegations concerning her symptoms

were "partially credible."   Tr. 19.   The ALJ noted that the plaintiff's testimony regarding

constant pain and fatigue and the inability to lift any object was "unsupported by the objective

medical evidence."  Tr. 20.

This court concludes that the ALJ's determination of credibility should not be disturbed.

### 3.   Did the ALJ deny plaintiff a full and fair hearing?

In her brief, plaintiff alleges that the "tone and tenor" of the administrative hearing "is

clear even from a reading of the dry transcript."  Plaintiff does not, however, explain in her brief

exactly what the "tone and tenor" of the hearing was and how it affected her ability to receive a

full and fair hearing.  Doc. 18, p. 12.  Plaintiff additionally contends that the Appeals Council did

not address her complaint of an unfair hearing when it denied her request for review.

Plaintiff maintains that the ALJ denied her the opportunity to call her husband as a witness after her attorney finished questioning the VE.  According to plaintiff, "[t]his violative conclusion of the administrative hearing came even after [plaintiff's attorney] had informed the ALJ previously of the intent to call [plaintiff's] husband as a witness."  Doc. 18, p. 2.

The record reflects that when he finished questioning the VE, plaintiff's attorney and the ALJ had the following colloquy:

ALJ:            Is that it, Mr. Spruel?

ATTY:          Yes, sir.

ALJ:            All right, Ms. Davis, your hearing's over.  You'll get a decision in the mail.  It'll go – it'll be mailed both to you and to Mr. Spruel.  The hearing's –

ATTY:          Your Honor –

ALJ:            concluded.

ATTY:          Your Honor, we did have the husband outside, but his testimony would go basically to his role in the household, et cetera.

There is no indication in the record that the ALJ refused to allow plaintiff's husband to testify and, as argued by the Commissioner, plaintiff has failed to show how she has been prejudiced or how her husband's testimony could have altered the outcome of this case.

The court has reviewed the transcript of the hearing and finds no inappropriate comments or conduct on the part of the ALJ.  The court will not attempt to surmise from the transcript of the hearing what plaintiff meant by her assertion that the "tone and tenor" of the hearing denied her an unfair hearing.

The court finds this argument without merit.

-23-

## CONCLUSION

Based on the foregoing, plaintiff's request for relief is granted and it is RECOMMENDED that the ALJ's decision be REVERSED and this matter REMANDED for further proceedings consistent with this opinion.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE this 28th day of August, 2013.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE